## GILMOUR v. EWING et al.[1]

*(Circuit Court, D. Washington, W. D. May 4, 1892.)*

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—RIGHTS OF MORTGAGEE.
   An insolvent debtor cannot by his voluntary assignment defeat the right of a mortgagee to whom he has executed a mortgage to foreclose the mortgage after default.

2. FEDERAL COURTS—JURISDICTION—PENDENCY OF CAUSE IN STATE COURT.
   The pendency of an action in a state court will not bar an action in a United States court to determine the same question between the same parties.

3. INSOLVENCY—APPOINTMENT OF ASSIGNEE.
   Under the insolvent act of Washington, contained in the Code of 1881, the title of the debtor's property did not pass out of the debtor until an assignee had been appointed, and was authorized to receive the property.

[1] Reported by T. W. Hammond, Esq., of the Tacoma bar.

**4. SAME—REPEAL OF ACT—PENDING PROCEEDINGS.**

The act of 1890, providing for voluntary assignments by insolvent debtors, operated to repeal the old insolvent law of Washington, and proceedings pending in court under the old law when the new law went into effect fell with the old law, unless an assignee had actually been appointed and qualified, so as to divest the debtor of the title to his property.

**5. SAME.**

The appointment of an assignee under the old law, after the new law went into effect, is void.

**6. PLEADING—ASSIGNMENT FOR BENEFIT OF CREDITORS.**

An allegation in a pleading that a party was "duly appointed assignee by a court of competent jurisdiction" is insufficient in a court of equity of the United States, although sufficient in the state courts under a Code.

In Equity Exceptions to answer of Coke Ewing. Exceptions sustained.

This was a suit in equity to foreclose a mortgage. Coke Ewing, claiming to be the assignee in insolvency of the mortgagors, answered in the cause, and insisted—(1) That the plaintiff could not maintain her action because the mortgagors had made an assignment of all their property for the benefit of their creditors, under the insolvent laws contained in the Code of 1881 of the state of Washington, and that by such assignment the property became *custodia legis* in the state court, and that this court could not interfere with it. (2) That a suit brought and pending in the state court by Ewing to set aside the mortgage as fraudulent, as against the creditors of the mortgagors, was a bar to the action in the circuit court. (3) He set forth in his answer facts tending to show the invalidity of the mortgage as against creditors, and sought to have it decreed void. It appeared that, after executing the mortgage, the mortgagors instituted proceedings in the state court to procure a discharge from their debts, under an insolvent law then in force in the state, (Code Wash. 1881, § 2014 et seq.,) which provided that the debtor might petition the court for leave to surrender his property for the benefit of his creditors, and, upon such petition being filed in court, the creditors might choose an assignee, or, in the event of their failing to do so, that the court might appoint one to receive the property of the debtor, and administer the trust. The law also provided for the appointment of a receiver to take charge of the property pending the selection and appointment of an assignee. The petition was filed, and, the creditors having failed to select an assignee, the court appointed a receiver to take charge of the property, but did not appoint an assignee until some time after a new assignment law had been passed by the legislature of the state, and gone into effect. Laws Wash. 1889–90, p. 83. The other facts sufficiently appear in the opinion of the court.

*Crowley & Sullivan*, for complainant.

*Ebert T. Dunning* and *W. H. Pritchard*, for defendant Ewing.

HANFORD, District Judge, (*orally.*) The insolvent law and the assignment law both provide only for voluntary surrenders of property by debtors, and the initiation of proceedings under either statute is necessarily the voluntary act of the debtor. A mortgagor of property must be without power to defeat his mortgage by any voluntary act of his own subse-

quently to the vesting of the mortgagee's rights, and can no more by his act prevent a suit to foreclose the mortgage after default than he can convey the property clear of the lien of the mortgage to another person. He cannot, by any voluntary act, defeat the lien or the right of the mortgagee to proceed, whenever the debt is due, to foreclose the mortgage, and subject the security to the payment of the debt. The insolvent proceeding or assignment made by the debtor is no bar to this suit to foreclose the mortgage, and the plea which sets forth these proceedings as a bar to this suit is, for that reason, insufficient.

The second plea, which sets forth the pendency of another action involving the validity of this mortgage in the superior court of Pierce county, is also insufficient, for the reason that this court has concurrent jurisdiction with the superior court of the county for the determination of this very question, and the suit in one court is no bar to the litigation of the same question between the same parties in another court. I am aware of the difficulty which may sometimes arise from a collision of jurisdiction, but the authorities have settled the question, beyond the power of this court to hold otherwise, that two suits may proceed at the same time, between the same parties, for the determination of the same question, one in a national court and one in a state court, if the conditions which give the national court jurisdiction exist. There may be two distinct judgments, only one of which can be executed; and, according to the decision of the circuit court for this circuit, in the case of *Sharon* v. *Terry*, 36 Fed. Rep. 337, the decision of the court which first acquires jurisdiction of the parties will prevail, although rendered after the decision of the court which last assumed jurisdiction. That case is directly in point as to the question concerning the jurisdiction of the two courts to determine the validity of this mortgage. It is exactly the same in principle. It was a proceeding to determine the validity of a paper writing alleged to be a marriage contract. Sharon first brought an action in the United States court alleging that Miss Hill had possession of a paper writing purporting to be a marriage contract with himself, which she was proposing to use for the purpose of proving the fact of a valid marriage, and under which she proposed to claim a wife's interest in his property, and prayed for an injunction to prevent her from asserting any rights under that alleged contract, and to compel her to surrender it to be canceled on the ground that it was a forgery and a fraud. Subsequently the defendant in that case brought a suit in the superior court of San Francisco against Sharon, based upon this same alleged marriage contract, alleging her marriage, and praying a divorce and division of property; and, using that paper as evidence of the marriage, obtained a decree in her favor that she was married to Sharon, and should be divorced, and giving her a share of his estate. After that judgment was rendered in the state court, the case proceeded to final judgment in the United States court, and it was there decided and adjudged that the paper was a forgery and void, and an injunction was issued as prayed for, and the paper decreed to be canceled. Subsequently, the divorce case having been reversed by the supreme court of

California, (22 Pac. Rep. 26,) upon a ground not affecting the validity of the paper, on a second trial the state court refused to receive the paper in evidence, or to regard it for any purpose whatever, holding itself to be bound by the decision of the United States court upon the question of its validity. Here the validity of the paper evidence of a contract is the thing in issue. It is the issue which is attempted to be raised by the assignee in this case. He alleges that there is a suit pending in the superior court of Pierce county for the determination of the validity of this mortgage. I do not think that the pendency of a suit in one court is any bar to a proceeding involving the same matter in another court having concurrent jurisdiction. If there should happen to be a variance in the decisions of the courts, the judgment of the court which first acquired jurisdiction would prevail. It seems hardly worth while for parties to go to the trouble and expense of litigating the same question twice, but if they choose to do so the court has no right to deny them that privilege.

The remaining question, as to the right of this assignee to contest the validity of the mortgage in this court, depends upon whether he is in fact an assignee. On the facts stated, I think that he is not. He alleges that he was duly appointed by a court of competent jurisdiction. If this were an action at law, that would be sufficient under the Code of this state; but this is a suit in equity, and the Code rules have no application. I think enough is alleged here to show that there has been no valid appointment of the assignee by the superior court.

The plea does not set up a common-law assignment; it is an assignment under the statute. While it says an assignment was made on January 22, 1890, that cannot be true. The only statute in force at that time provided for such a series of proceedings that the assignment could not have been completed until a date later than that. The act provided for the making of an assignment, but the assignment was not the first thing the debtor had to do. He had to make his petition to surrender his property, and the assignment was not complete until there had been an actual surrender of his property into the hands of some one authorized to receive it. Under that law the debtor did not name the assignee, but simply petitioned the court for leave to surrender his estate to his creditors, and be discharged of his debts. Then the creditors could meet and choose an assignee, and, in the event of their failing to choose one, the court could appoint. The assignee was the person authorized to receive the surrendered property and to handle the assets. Section 2046 provided that, from and after the surrender of the property of the insolvent debtor, all property of such insolvent should be fully vested in his assignee or assignees for the benefit of creditors. There was no change of property; that is, the title was not transferred until the surrender. A surrender could not take place until there was some one authorized to receive it. After the title went out of the insolvent debtor it passed to and became vested in the assignee. Under section 2022, the court was authorized to appoint a receiver, but the receiver was not vested with the authority, and could not perform the functions, of an

assignee. His appointment was merely of a temporary character, to preserve the property from being wasted pending the appointment of an assignee; and of course the title would remain in the insolvent debtor until the assignee was appointed. So there could not have been an assignment on January 22, 1890, the day the petition was filed by the debtor. The order of the court authorizing Mr. Ewing to serve as assignee was made in April, 1891, after the new law had been passed and gone into effect. The new law contains provisions which are inconsistent with the old law. Under the present law, the only way in which an assignment can be made is by an instrument in writing, (a deed,) filed in the office of the county auditor. The new law repealing all laws inconsistent with itself supplants the provisions of the Code, in relation to assignments. The proceedings begun under the Code, if carried to a point where a transfer of title occurred, would I think authorize the court to complete the execution of the trust under the provisions of the Code; but, the power to appoint the assignee under the Code having been cut off by the new law, no assignee having been appointed while the old law was in force, and no transfer of the title having therefore taken place, the proceeding fell with the repeal of the old law. The pleading does not show an assignment made in writing to any person named, or any such compliance with the provisions of the new law as to give the assignment any validity, so I think the assignee, Mr. Ewing, has no such interest in the subject-matter of this mortgage as gives him a right to contest its validity.